[Civ. No. 56496. Second Dist., Div. Two. June 11, 1980.]

RICHARD P. et al., Plaintiffs and Appellants, v.
VISTA DEL MAR CHILD CARE SERVICE,
Defendant and Respondent.

Counsel

Francis S. Maas, Michael I. Cowan and Bratter & Maas for Plaintiffs and Appellants.

Revere, Citron & Wallace and Frank Revere for Defendant and Respondent.

Opinion

**BEACH, J.**—Plaintiffs sued defendant after discovering that a child whom they had adopted through defendant several years earlier was suffering from "extreme emotional and adjustment problems." The trial court sustained defendant's demurrer to the first amended complaint and, following plaintiffs' failure to amend the complaint within the 30-day period provided, ordered the action dismissed. Plaintiffs appeal from the judgment of dismissal. We affirm.

The thrust of the complaint is that an adoption agency may be held liable in tort on a theory of intentional or negligent misrepresentation in failing to warn the adoptive parents that the infant's premature birth might in the future lead to health problems, either physical or mental. As to an adoption agency's tortious liability based on negligence, recently the court in *Smith* v. *Alameda County Social Services Agency* (1979) 90 Cal.App.3d 929 [153 Cal.Rptr. 712], refused, based on reasons of public policy, to recognize tortious liability on the part of an adoption agency that had negligently failed to carry out its responsibilities in placing the child, who incidentally had brought the lawsuit against the agency, for adoption. Similarly, in the matter before us, we dispose of the cause of action based on negligent misrepresentation on grounds of public policy, which shall be discussed in detail later in this opinion. Because of our holding, we do not discuss the question of the cause of action being barred by the applicable statute of limitations, one of the grounds for the demurrer, though our review of the record at bench and of appropriate statutory and case law has convinced us this too was a proper ground on which to sustain the demurrer.

FACTS:

As alleged in the complaint, the facts appear as follows: On March 4, 1970, defendant Vista Del Mar Child Care Service (hereafter Vista)

placed an infant male child[1] (hereafter Gregory) in the home of plaintiffs (hereafter the plaintiffs) at the plaintiffs' request. Vista informed the plaintiffs that Gregory was premature and had large earlobes but that he otherwise was a healthy child. Commencing on March 5, 1970, the plaintiffs consulted defendant Dr. K.,[2] a pediatrician, to determine Gregory's mental and physical fitness. Apparently, Dr. K. found Gregory to be in good health, and on December 14, 1970, the superior court formally approved Gregory's adoption by the plaintiffs.

On May 28, 1973, the plaintiffs discovered that Gregory was suffering from "severe neurological damage,…hyperkenesia, and neurological immaturity." Approximately three years later, in July 1976, Dr. K. told the plaintiffs that Gregory's emotional and medical problems were predictable at his birth. Dr. K. based his opinion on a report prepared by Vista on February 18, 1970, prior to Gregory's placement in the plaintiffs' home the following March. The report, entitled "Final Examination Record, Vista Del Mar Child-Care Service," stated that Gregory "was premature and had a poor suck for one week. At the present time there is no neurological disease…recommend adoption." A copy of that same report had also been furnished by Vista to the plaintiffs at the time of Gregory's adoption.

The plaintiffs brought suit against Vista and Dr. K. on April 26, 1977, alleging fraud, negligence, breach of contract, breach of implied warranty, breach of express warranty, strict liability in tort, and medical malpractice.

Vista interposed a demurrer to the complaint on the grounds that it failed to state facts sufficient to constitute a cause of action and that the actions were barred by the statute of limitations. The trial court sustained the demurrer with leave to amend. When the plaintiffs chose to stand on the complaint, the court ordered a dismissal of the action with respect to Vista.

## Issues:

1.   Did the plaintiffs properly plead fraud and misrepresentation?

2.   Does the law recognize a cause of action in tort, against an adoption agency, for the unintentional but negligent misrepresentation in the placement of a child?

---

[1] We were unable to find in the record any indication of the child's age.
[2] Dr. K. is not a party to this appeal.

3. If the present law does not recognize such a cause of action, should it?

4. Does an adoption agency impliedly "warrant" good health of the adopted child, akin to product warranty?

DISCUSSION:

██ A demurrer reaches only those defects which appear on the face of the complaint or which are judicially noticeable. (*Johnson Rancho etc. Dist.* v. *County of Yuba* (1963) 223 Cal.App.2d 681, 684 [35 Cal.Rptr. 828].) It admits all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].) A complaint which fails to state facts sufficient to constitute a cause of action is demurrable. (Code of Civ. Proc., § 430.10.) ██ Where, as here, a party declines to avail itself of leave to amend its complaint after a demurrer thereto has been sustained, it must stand upon its pleading; and if the complaint is objectionable on any ground, the judgment of dismissal must be affirmed. (*California Trust Co.* v. *Cohn* (1932) 214 Cal. 619, 623 [7 P.2d 297]; *Hendricks* v. *Osman* (1946) 72 Cal.App.2d 465, 466-467 [164 P.2d 545].)

██ The gravamen of the plaintiffs' complaint concerns fraud or deceit by Vista. Fraudulent representations, to constitute ground for relief, must be as to existing and material facts; predictions of future events are ordinarily considered nonactionable expressions of opinion. (*Daniels* v. *Oldenburg* (1950) 100 Cal.App.2d 724, 727 [224 P.2d 472]; *Eade* v. *Reich* (1932) 120 Cal.App. 32, 35 [7 P.2d 1043]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 447, p. 2712.)

██ In the present case, it appears from the complaint that Vista informed the plaintiffs prior to their adoption of Gregory that Gregory was premature, had large earlobes and "had a poor suck for one week" but that at that time he had no neurological damage and was in excellent physical and mental health. No facts are alleged in the complaint from which it could be inferred that Vista's statements as to Gregory's health at the time of his adoption were false. As appears from the complaint, the plaintiffs' own pediatrician, Dr. K., whom they consulted regarding Gregory's health the day after Vista had placed Gregory with them, found no health problems, thus resulting in the plaintiffs' formal

adoption of Gregory in December 1970, some eight months after Gregory's placement with them. The plaintiffs, however, claim that Vista's statement that Gregory was in excellent health and thus, to use the complaint's phraseology, "a proper subject for adoption" not only was a factual representation of Gregory's health as it existed at the time of his placement in the plaintiffs' household but also constituted a representation that in the future too Gregory would enjoy excellent health, which representation the plaintiffs allege was false because some three years after his placement with the plaintiffs Gregory exhibited severe emotional problems. As we noted earlier, predictions as to future events are deemed expressions of opinion, and thus not actionable. (*Daniels* v. *Oldenburg, supra,* 100 Cal.App.2d 724, 727.) (5) There is an exception to that rule. When the speaker has knowledge of facts not warranting the opinion, or the opinion reasonably tends to induce the other party to consider and rely upon such representation as a fact, there would be a basis for liability in fraud. (*Harris* v. *Miller* (1925) 196 Cal. 8, 15-16 [235 P. 981]; *Daniels* v. *Oldenburg, supra,* at p. 727.) ▇ However, here not only does it appear from the complaint that Vista made a full disclosure of the facts within its knowledge as they existed at the time of Gregory's placement with the plaintiffs, but the facts alleged in the complaint indicate that rather than rely upon Vista's statements as to Gregory's health, the plaintiffs, commencing on the day after Gregory's placement with them, conducted their own investigation into the matter by consulting with their own pediatrician. The requisite element of reliance lacking in the alleged cause of action for intentional misrepresentation is also lacking in the alleged cause of action for negligent misrepresentation. (*Van Meter* v. *Bent Construction Co.* (1956) 46 Cal.2d 588, 595 [297 P.2d 644]; 4 Witkin, Summary of Cal. Law, *supra,* Torts, § 482, p. 2741.)[3]

▇ More importantly, no cause of action for negligence should be recognized based on considerations of public policy. "Decisions as to whether to tighten or enlarge 'the circle of rights and remedies' [fn. omitted] are often phrased in terms of a 'duty of care.'" (*Smith* v. *Alameda County Social Services Agency* (1979) 90 Cal.App.3d 929, 935 [153 Cal.Rptr. 712].) The real basis of negligence is not carelessness, but behavior which society in general views as involving unreasonable risk of harm to others. (Prosser, Law of Torts (3d ed. 1964) § 31, pp. 148-149.)

---

[3]Because of our conclusion that the plaintiffs failed to state a cause of action based on fraud, we need not reach the issue of whether the plaintiffs properly pleaded punitive damages. (*Smith* v. *Alameda County Social Services Agency* (1979) 90 Cal.App.3d 929, 942 [153 Cal.Rptr. 712].)

The policy factors which must be considered in determining whether a duty exists have been judicially defined as follows: the foreseeability of harm, the degree of certainty of injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Hale* v. *George A. Hormel & Co.* (1975) 48 Cal.App.3d 73, 86-87 [121 Cal.Rptr. 144].)

As to the "foreseeability of harm" factor, it does not follow that a premature baby will necessarily at some future date suffer severe emotional or developmental problems. The type of injury complained of is necessarily the result of a variety of causative factors other than the child's premature birth. Our conclusion on the foreseeability of harm also applies to the factors of degree of certainty of injury and closeness of the connection between the defendant's conduct. Additionally, no moral blame can be attributed to an adoption agency which makes a full disclosure of the child's medical history to the prospective adoptive parents. Moreover, it is doubtful that the proposed liability would reduce future harm. "If anything, it would be more likely to impede the proper functioning of adoption agencies." (*Smith* v. *Alameda County Social Services Agency, supra*, 90 Cal.App.3d 929, 938, which for public policy reasons rejected a claim by a 17-year-old boy that a county adoption agency, into whose custody he had been relinquished since the age of 2, had negligently failed to take reasonable actions to bring about his adoption.)

In short, to impose liability in a case such as this would in effect make the adoption agency a guarantor of the infant's future good health. That, of course, would be entirely unreasonable. After all, such a guarantee is unavailable to natural parents who, when fortunate enough to bring into the world a healthy child, have no guarantee whatsoever that the child will continue to enjoy good physical and emotional health.

■ The plaintiffs also claim breach of contract based on Vista's failure to procure for the plaintiffs a child that was physically and mentally healthy. Even assuming that the existence of a contract was

properly pleaded, at the time of his adoption Gregory was a healthy child. This, as alleged in the complaint, was confirmed by the plaintiffs' own pediatrician. The facts as alleged in the complaint fail to establish a breach. The injury and damages involved here are, like those involved in the cause of action for negligence, highly uncertain in terms of their cause. (*Smith* v. *Alameda County Social Services Agency, supra,* 90 Cal.App.3d 929, 942-943.)

■ The remaining causes of action are based on alleged breach of warranty, express and implied. The plaintiffs claim that the adoption agency "warranted that Gregory was mentally, physically and legally a proper subject for adoption," and that he actually was not. As we noted earlier, Vista's statement that Gregory was at the time of adoption in good health was, as alleged in the complaint, supported by the plaintiffs' own medical expert. Thus no breach of warranty appears from the facts alleged in the complaint. With respect to any warranty as to Gregory's future health, the complaint fails to allege facts supporting such an inference. Furthermore, to accept a warranty theory under circumstances as involved in this case, is to give legal recognition to the impossible, for no human being, no matter how healthy at birth, can ever be guaranteed to be unaffected by physical or mental impairment in later years.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 6, 1980. Mosk, J., did not participate therein.